**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4562**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAEWON WARREN,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:15-cr-00516-DCN-1)

Submitted: May 1, 2019                    Decided: May 17, 2019

Before NIEMEYER and DIAZ, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Louis H. Lang, CALLISON TIGHE & ROBINSON, LLC, Columbia, South Carolina, for Appellant. Sherri A. Lydon, United States Attorney, Marshall Austin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Daewon Warren appeals his convictions and sentence for conspiracy to transport a minor for prostitution, in violation of 18 U.S.C. § 2423(a), (e) (2012) (Count 1), transporting a minor to engage in prostitution, in violation of 18 U.S.C. § 1591(a)(1), (2), (b)(1), (2012) (Count 2), transportation for prostitution, in violation of 18 U.S.C. §§ 2, 2421(a) (2012) (Count 3), transportation of a minor for sex, in violation of 18 U.S.C. §§ 2, 2423(a) (Count 4), sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), (e) (2012) (Count 5), possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (2012) (Count 6), transportation for prostitution, in violation of 18 U.S.C. § 2421(a) (Count 7), and obstruction of a sex trafficking of children investigation, in violation of 18 U.S.C. §§ 2, 1591(d) (2012) (Count 8). Warren contends that the district court erred in denying his motion to suppress certain statements made to law enforcement, that the district court abused its discretion in qualifying an expert witness and in permitting testimony from that expert witness on certain subjects, and that the district court plainly erred in applying a two-level enhancement for obstruction of justice to his conviction on Count 8. For the reasons stated herein, we affirm.

I.

Detectives Ron Metrejean and Charlie Benton arrived at a Motel 6 in response to a tip that an African-American male with cornrows, wearing a bright shirt, and driving a green BMW was trafficking an underage girl in room 143. Metrejean, wearing a police vest and a visible sidearm, approached Warren, who matched the description in the tip,

2

and began asking routine questions while Benton investigated room 143. This questioning took place in an open breezeway, and at no point was Warren asked to stay or otherwise told he could not leave the conversation.

A few minutes after Metrejean began questioning Warren, a marked patrol car with uniformed officers pulled into the parking lot, and the officers exited their vehicle and stood off to the side of the breezeway. A special agent with the Federal Bureau of Investigation (FBI) was also on the scene, but he remained on the outside perimeter of the motel, and it is undetermined whether he was visible to Warren, or even if Warren would have known he was an FBI agent. After investigating room 143 and finding nothing, Benton joined Warren and Metrejean. Benton also questioned Warren, asking similar questions about Warren's identity, where he was staying in the hotel, and whether anyone was staying with him. Based on Warren's response, Benton went to the room in which Warren was staying, where he made contact with A.L., an underage female. The officers subsequently arrested Warren. Warren moved to suppress his statements, but the district court denied the motion.

At trial, the Government introduced testimony from Supervisory Special Agent James Hardie of the FBI's Behavioral Analysis Unit. Hardie, who has been an FBI agent since 2001, spent the bulk of his career investigating human trafficking, specifically sex trafficking involving children, and has interviewed hundreds of individuals involved in human trafficking. His work has included training law enforcement agencies to perform human trafficking investigations, and he has published articles on the subject in various law enforcement magazines and journals. Hardie, who acknowledged that he had no

3

information regarding the facts of Warren's case, testified generally about human trafficking. His testimony covered a variety of topics, including: defining a variety of terms used in the human trafficking subculture, how traffickers often recruit victims, the various ways in which traffickers and victims interact, how victims interact with each other, how traffickers maintain control over their victims, the rules that many traffickers impose on their victims, the use of online advertisements, the challenges victims face in getting away from traffickers, and the sense of loyalty a victim sometimes develops for a trafficker.

The presentence report separated Warren's convictions into two groups: group one encompassed Counts 1 through 6 and Count 8, while group two included only Count 7. *See* U.S. Sentencing Guidelines Manual § 3D1.1 (2016). The PSR recommended that all seven offenses in group one had adjusted offense levels of 44, and the offense in group two had an adjusted offense level of 40. The offense level calculation for the group one offenses included a two-level enhancement for obstruction of justice under USSG § 3C1.1. After grouping the offenses and determining their adjusted offense levels under USSG § 3D1.3(a), the PSR recommended adding two offense levels as set out in USSG § 3D1.4. This established a recommended combined adjusted offense level of 46, which the PSR recommended reducing to 43. *See* USSG ch. 5, pt. A, cmt. n.2. At Warren's sentencing hearing, Warren did not object to this calculation or to the two-level enhancement for obstruction of justice under USSG § 3C1.1. Thus, the district court adopted the PSR's findings, determining that Warren's total offense level was 43 and placing him in criminal history category I. Warren's Sentencing Guidelines range was,

4

therefore, life imprisonment. The district court then sentenced Warren to 360 months' imprisonment and a lifetime term of supervised release.

## II.

We first address Warren's contention that the district court erred in denying his motion to suppress statements he made to Detectives Metrejean and Benton at the motel. "In reviewing a district court's ruling on a motion to suppress, [we] review[] conclusions of law de novo and underlying factual findings for clear error." *United States v. Clarke*, 842 F.3d 288, 293 (4th Cir. 2016) (internal quotation marks omitted). "Because the district court denied [Warren's] motion to suppress, we construe the evidence in the light most favorable to the government." *Id.* (internal quotation marks omitted).

"The Fifth Amendment provides that [n]o person . . . shall be compelled in any criminal case to be a witness against himself." *United States v. Azua-Rinconada*, 914 F.3d 319, 325 (4th Cir. 2019) (internal quotation marks omitted). "[T]he Supreme Court has mandated the use of procedural measures to ensure that defendants, when subjected to custodial interrogations, are advised of their Fifth Amendment rights." *Id.* (internal quotation marks omitted). "Thus, unless a defendant is advised of his Fifth Amendment rights pursuant to *Miranda* [*v. Arizona*, 389 U.S. 436 (1966)] and voluntarily waives those rights, statements he makes during a custodial interrogation must be suppressed." *Id.* "When determining whether an interrogation is custodial for purposes of *Miranda*, a court asks whether, under the totality of the circumstances, a suspect's freedom of action was curtailed to a degree associated with formal arrest." *Id.* at 325-26 (internal quotation marks omitted). "This inquiry is an objective one, and asks whether a reasonable person

5

would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* at 326 (internal ellipses and quotation marks omitted).

We conclude that Warren was not subjected to a custodial interrogation that necessitated advisement of his Fifth Amendment rights prior to questioning. The primary argument put forward by Warren is that the number of officers, combined with Metrejean being visibly armed, created a police-dominated atmosphere such that a reasonable person in Warren's position would have believed he was not free to leave. In this case, it appears that there were no more than five law enforcement officers at the motel, one of whom may not have been visible to Warren. At no point was Warren told he was not free to leave or even asked to stay in the breezeway, which was itself an open area in front of the motel office, and Warren was physically free to walk away from the detectives. Given the totality of these circumstances, we find no error in the district court's denial of Warren's motion to suppress his statements to the officers.

III.

Next, we turn to Warren's claim that the district court abused its discretion by qualifying Hardie as an expert in human trafficking and in admitting Hardie's testimony that Warren alleges went beyond the facts of his case. "We review a district court's decision to qualify an expert witness, as well as the admission of such testimony, for abuse of discretion." *United States v. Garcia*, 752 F.3d 382, 390 (4th Cir. 2014). "A court abuses its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (internal quotation marks omitted).

Under Fed. R. Evid. 702:

6

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

A district court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Belville v. Ford Motor Co.*, 919 F.3d 229, 232 (4th Cir. 2019). "[A]n expert's testimony is relevant if it has a valid scientific connection to the pertinent inquiry," and it is reliable if it is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Id.* (internal emphasis and quotation marks omitted).

The district court did not abuse its discretion by qualifying Hardie as an expert witness. Hardie had extensive experience investigating human trafficking, particularly sex trafficking involving children, and through his work he interviewed hundreds of individuals involved in sex trafficking. He instructs other law enforcement agencies on how to perform sex trafficking investigations, and he has published articles in law enforcement periodicals. While Hardie may lack the academic prestige or clinical experience of some experts, he was nonetheless qualified to discuss the typical manner in which human trafficking operates.

Further, we find no abuse of discretion in the district court's allowing Hardie to testify broadly about the typical human trafficking experiences of its victims and the

7

common behaviors of traffickers. Earlier in the trial, the Government called one of Warren's victims to testify. Her testimony discussed how she was recruited against her will, how she was taught, her experiences with another of Warren's victims, her relationship and interactions with Warren and the other victim, the violence she encountered while working for Warren, and Warren's expectations and requirements. Hardie's testimony was not introduced simply to tell the jury about the horrors of human trafficking, but to give context to the victim's testimony. Much of Hardie's testimony related directly to aspects of the victim's testimony and aided the jury in better understanding some of the concepts and events described by the victim and in assessing the victim's credibility. Without Hardie's testimony, the jury would have had no way of determining whether the victim's experiences were common, unique, or implausible. Hardie's testimony also explained why others might have chosen to not testify against Warren.

IV.

Finally, Warren asserts that the district court plainly erred by applying a two-level enhancement to his offense level for obstruction of justice under USSG § 3C1.1. Specifically, Warren argues that the enhancement should not have been applied because Count 8 charged him with obstruction of justice, and the commentary to USSG § 3C1.1 precludes the application of the enhancement to an obstruction of justice offense.

Generally, when reviewing a district court's application of the Guidelines, we review the district court's legal conclusions de novo and factual conclusions for clear error. *United States v. Allen*, 909 F.3d 671, 677 (4th Cir. 2018). Here, however, because

8

Warren did not object to the Guidelines calculations before the district court, the issue is reviewed for plain error. *United States v. Webb*, 738 F.3d 638, 640-41 (4th Cir. 2013). To establish plain error, Warren must show "(1) that the district court erred, (2) that the error is clear or obvious, and (3) that the error affected his substantial rights, meaning that it affected the outcome of the district court proceedings." *Id.* at 640-41(internal quotation marks omitted). On plain error review, "the defendant bears the burden of satisfying each of the elements of the . . . standard." *United States v. Massenberg*, 564 F.3d 337, 343 (4th Cir. 2009) (emphasis omitted).

We need not reach the issue of whether the district court erred in applying the enhancement. Even if the district court did err, Warren does not meet his burden to show that the error affected his substantial rights because his total offense level would remain at 43 and his Guidelines range calculation would not change.

To determine his offense level, the district court placed Warren's offenses into two groups, as it is instructed to do by USSG § 3D1.1. The district court determined that Warren's adjusted offense level for group one was 44 and his adjusted offense level for group two was 40. Even if we assume that the district court erred in applying the obstruction of justice enhancement, Warren's adjusted offense level for group one would only drop to 42. Warren would still have received two additional points to his offense level under USSG § 3D1.4, which would have placed his combined adjusted offense level at 44. The Guidelines instruct that when an adjusted offense level is above 43, it should be reduced to 43 for the purpose of determining the sentencing range. USSG ch. 5, pt. A, cmt. n.2. Therefore, Warren's total offense level would be 43 and his Guidelines

range would have been life imprisonment, which is what the district court calculated during sentencing. Thus, we conclude that the district court did not plainly err in applying the two-level enhancement for obstruction of justice.

V.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*